UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                     )
G.R. and N.K., individually and      )
as parents and legal guardians of O.R.,)
                          Plaintiffs )
v.                                   )
                                     )
LEXINGTON PUBLIC SCHOOLS,            )      Civil Action No.
                                     )
BUREAU OF SPECIAL EDUCATION APPEALS, and )
                                     )
MASSACHUSETTS DEPARTMENT OF          )
ELEMENTARY AND SECONDARY EDUCATION   )
                          Defendants )
_____)
```

**COMPLAINT FOR JUDICIAL REVIEW OF
FINAL DECISION OF STATE ADMINISTRATIVE AGENCY**

**JURISDICTION**

The Plaintiffs seek judicial review of the decision of the Bureau of Special Education Appeals (hereinafter, "BSEA"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(i)(2)(A). A copy of the BSEA's decision accompanies this complaint as **Exhibit A**. As this case arises under the laws of the United States, this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

**PARTIES**

1. The Plaintiffs, G.R. and N.K. are residents of Lexington, Massachusetts. They bring this action on behalf of their minor son, O.R., who attends Fiske Elementary School in Lexington.

1

2. Defendant Lexington Public School System (hereinafter, "LPS") is a school district that provides elementary education for Plaintiffs' son.

3. Defendant Bureau of Special Education Appeals is the administrative hearing board charged with providing due process hearings for special education matters, pursuant to 20 U.S.C. §1400 *et seq*.

4. Defendant Massachusetts Department of Elementary and Secondary Education is an agency of the Commonwealth of Massachusetts charged with operating the Bureau of Special Education Appeals.

## VENUE

5. Venue is proper with this Court pursuant to 18 U.S.C. §1391(b)(1) and (2), because the all three defendants have their principle places of business in this district and because a substantial part of the events and omissions giving rise to this claim occurred in Lexington, Massachusetts.

## STATEMENT OF FACTS

6. O.R. is a child with an autism spectrum diagnosis who possesses unusually advanced academic skills but requires additional support in the area of social and emotional development.

7. O.R.'s psychologist, neuropsychologist and all the other private specialists he has been working with on a regular basis have consistently recommended an educational setting with the following parameters:

a). A manageable class size (fewer than the current size of 20+ children that LPS offers);

b). Either a general education classroom or an integrated classroom (all of the specialists

have recommended against a sub-separate classroom comprised exclusively of children with autism-related disorder – based on O.R.'s current medical needs);

c). The classroom must have a special education teacher or teaching assistant;

d). O.R.'s educational program must incorporate the core elements of the DIR/Floortime treatment methodology that has a proven track record of success in O.R.'s treatment history.

8. O.R. has been attending the Fiske elementary school in Lexington since October 2012 when he entered kindergarten.  Despite the repeated attempts by the Plaintiffs to adjust O.R.'s Individualized Education Plan (hereinafter, "IEP") according to O.R.'s medically documented needs, LPS has not created a system that would reflect the recommendations by O.R.'s medical team.

9. Instead of creating an appropriate program for O.R., LPS placed him into its existing "Intensive Learning Program" class (hereinafter, "ILP"), comprised exclusively of children with autism-related disorders, in direct contradiction to the aforementioned medical recommendations.

10. Although O.R. currently spends more than 50% of his time in the general education classroom, he is periodically removed from that classroom and brought into the ILP room with no typical peers.  When he is not removed, he is being watched and regulated by a "student support instructor" (hereinafter, "SSI") who is assigned exclusively to O.R. at all times.

11. It has been documented that O.R. thrives in smaller, more regulated environments and requires very little or no support in that setting.  The administrative record will show that O.R. has a history of succeeding in smaller classrooms outside of school requiring no

additional support, with teachers being unaware of O.R.'s special needs.

12. Instead of creating a program where O.R. would function with little or no support, LPS continues to force him into a much more restrictive setting where he spends a part of the day in the ILP room with no appropriate communication partners (according to O.R.'s psychologist who has observed O.R. in the ILP room) and the other part of his day in the general education classroom, with an SSI constantly attached to him.

13. The Plaintiffs have been communicating O.R.'s history of success in other educational environments to LPS since before his placement in the kindergarten. Most recently, on July 29th, 2013, the Plaintiffs sent an electronic message to LPS administration (including the superintendent and the director of special education) informing them of O.R.'s success in the "Lexplorations" camp (which LPS organizes for typical children and which is located in one of the LPS buildings) and inviting LPS to observe O.R. at camp, where he thrived with no SSIs or any other support. A redacted copy of the email accompanies this Complaint as **Exhibit B**. No one came to observe O.R. or even responded to the email.

14. For the past two months, the Plaintiffs have been repeatedly asking LPS personnel (including its attorneys) whether O.R.'s other services would continue if they rejected O.R.'s placement in the ILP classroom. LPS has still not provided an answer.

15. During the 2012-2013 school year, O.R. attended LPS kindergarten mostly on a half-day basis, devoting the remaining time to various therapeutic and social opportunities for O.R., in an attempt to compensate for the deficiencies in his educational program. As a result, O.R. has made progress in his areas of weakness during the year, including noticeable progress at school.

16. The school has used O.R.'s progress during the school year as evidence that his school program is working, rejecting most of the medical recommendations on that basis. The Plaintiffs continue to maintain that O.R.'s progress should be attributed to the myriad of activities <u>outside of school</u> and that the deficient school program impedes O.R.'s further development and makes him a handicapped child to a much greater extent than necessary.

17. In August 2012, the Plaintiffs filed a hearing request with BSEA. The hearing was conducted on March 21 and 27, 2013. The hearing officer found O.R.'s program appropriate under the law, basing her decision on "the single most salient factor" that O.R. "has demonstrated positive adaptation to general education classroom rules and social-behavioral expectations." <u>Exhibit A</u>, Page 10. Aside from missing the crux of the Plaintiffs' argument, the decision contains a number of factual errors and incorrect references to the record, some of which the hearing officer clearly relied upon in making her determination. <u>See</u>, <u>e.g.</u>, the officer's discussion of the qualifications of one of Plaintiff's witnesses (Sarah Measures), not "according her testimony much weight" because, according to the officer, she had not previously observed O.R. in any educational setting. <u>Exhibit A</u>, PP. 10-11. The record clearly shows that during the hearing, Ms. Measures testified to her observation of O.R. in an educational setting.

## CAUSES OF ACTION

### COUNT ONE
### (VIOLATION OF *IDEA ACT*)

18. The allegations contained in paragraphs 1 through 17 above are repeated and re-alleged as though fully set forth herein.

19. The IDEA act provides federal funding for states to educate handicapped children, and in turn requires states to provide a "free appropriate public education" to all handicapped children. 20 U.S.C. §1412(a)(1). LPS failed to provide an appropriate educational program for O.R. that would be tailored to his individual needs, as required by law.

20. The IDEA Act also provides:

> Least restrictive environment
> (A) In general
> To the maximum extent appropriate, children with disabilities…are educated with children who are not disabled, and **special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily** (emphasis added).

20 U.S.C. 1412(a)(5)

LPS continues to violate this provision of the IDEA Act by removing O.R. from the general education classroom on a daily basis and placing him in the ILP room with disabled children, instead of creating a program for O.R. to be educated with non-disabled children, in which he would not require the support of an individual aide.

## COUNT TWO
### (VIOLATION OF THE STATE STATUTE AND REGULATIONS)

21. The allegations contained in paragraphs 1 through 20 above are repeated and re-alleged as though fully set forth herein.

22. As recently noted by this court, Massachusetts has set an even higher standard for special

education, defining an appropriate education as one that assures the "maximum possible development" of the child. <u>Nickerson-Reti v. Lexington Pub. Sch.</u>, 893 F. Supp. 2d 276, (D. Mass. Sept. 27, 2012), quoting <u>Roland M. v. Concord Sch. Comm.</u>, 910 F.2d 983, 987 (1st Cir. 1990).

23. Moreover, the Massachusetts law also provides that such education must be delivered in the "least restrictive environment." <u>See</u> 34 C.F.R. §300.552(d); Mass. Gen. Laws Ch. 71B, §2.

24. LPS has not created a program for O.R. that would assure his maximum possible development and allow him to realize his educational potential. Instead, LPS continues to place O.R. in its existing ILP program at the Fiske school, which may be appropriate for some children, but unnecessarily restrictive and potentially harmful for children with profiles similar to O.R., based on the professional opinions of O.R.'s medical team.

## PRAYER FOR RELIEF

25. WHEREFORE, in view of the arguments and authority noted herein, the Plaintiffs respectfully pray that the Court grant them the following relief:

   (a) Hear additional evidence in the case, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

   (b) Based on the preponderance of the evidence, set aside the BSEA decision dated May 15, 2013, pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii);

   (c) Award the Plaintiffs attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I).

   (d) Grant any further relief that this Honorable Court deems just and appropriate.

DATED:  August 8, 2013   Respectfully submitted,
Plaintiffs, by their Attorney

_/ s /  Gregory Romanovsky_____
Gregory Romanovsky (BBO#647569)
Romanovsky Law Offices
12 Marshall Street
Boston, MA 02108
Tel.:617 787 0000
Fax: 617 977 9770
E-mail:gr@romanovskylaw.com

## CERTIFICATE OF SERVICE

I, Gregory Romanovsky, attorney for the Plaintiffs, G.R. and N.K. hereby certify that on this 8th day of August, 2013, I have caused a true and accurate copy of the foregoing **Complaint**, to be mailed, postage pre-paid to the following Defendants:

Lexington Public Schools
146 Maple Street
Lexington, MA 02420

Bureau of Special Education Appeals
One Congress Street, 11th Floor
Boston, MA 02114

Massachusetts Department of Elementary and Secondary Education
75 Pleasant Street
Malden, MA 02148-4906

_/ s /  Gregory Romanovsky_____
Gregory Romanovsky (BBO#647569)